No. 21,576.

THE IRRIGATION LOAN & TRUST COMPANY, *Appellant,* v.
C. W. OSWALD, *Appellee.*

### SYLLABUS BY THE COURT.

SPECIFIC PERFORMANCE—*Contract to Sell Land—Option to Resell.* The
instrument set forth in the opinion was correctly construed as a con-
tract to purchase and an option to resell, but its terms relating to
such option were not complied with by the defendant, and the plaintiff,
under the facts and findings, is entitled to specific performance.

Appeal from Reno district court; FRANK F. PRIGG, judge.
Opinion filed November 9, 1918. Reversed.

*A. C. Malloy,* of Hutchinson, for the appellant.

*Frank L. Martin, Van M. Martin,* and *John M. Martin,* all of
Hutchinson, for the appellee.

The opinion of the court was delivered by

WEST, J.: This action was brought to enforce specific per-
formance of a contract. The defendant prevailed, and the
plaintiff appeals, assigning numerous errors which may all be
considered under one head—that the contract should have
been decreed valid instead of void. The trial was by the court,
and the subsidiary questions as to the reception of evidence and
the ruling on various motions need not be discussed.

The following is the contract sued on:

"Be it remembered, that the Irrigation Loan and Trust Company has
sold and C. W. Oswald has this day purchased Lots 117, 119 and 121,
South Main Street, Hutchinson, Kansas, for and in consideration of the
sum of Eleven Thousand ($11,000) Dollars to be paid on or before June
3, 1910, with interest at the rate of 6% per annum payable semi-annually
until paid. It being understood that the property sold includes the lots
mentioned, the buildings thereon, and between ninety ($90) and One
hundred ($100 ) Dollars due from the Rock Island Railway on the switch
track running through said property. And that this contract also in-
cludes the office furniture and equipment in the office of said building.

"It being further understood that second party, C. W. Oswald, shall
take charge of said property at once and collect the rents therefrom.
That the title to the said premises shall be delivered to the said Oswald
within ten days after the payment hereof and written demand is made
therefor, or if not demanded, then within ten days after June 3, 1910.

Said title to consist of full warrantee deed and to be free from all incumbrances and abstract of title furnished.  And in case there is any incumbrance which is not removed by said time, then the amount thereof shall be retained by C. W. Oswald pending the removal of such incumbrance.

"Provided further, that said party of the first part, the company, hereby agrees upon written demand at any time prior to June 3, 1910, and the payment of $330, being the interest on said purchase price to June 3, 1910, to repurchase said property at same price $330 excepted providing the same is tendered back in its present condition, natural wear and tear and loss by fire excepted, and carry $1,000 insurance payable to first party.

"It being further provided that no change shall be made in the improvements of said premises prior to the time final payment is made hereon except upon written permission.  Time being the essence of this contract and if repurchase is made under the terms hereof then this contract shall be cancelled; otherwise, to remain in full force and effect.

"Dated the 3rd day of December, 1909.

THE IRRIGATION LOAN AND TRUST CO.,
By F. W. CASNER, *President.*
C. W. OSWALD.

"Provided that upon payment of $4,000 and interest on June 3, 1910, or before, first party will accept as balance payment in full first mortgage for seven thousand on said property at 6% annual interest made by second party principal payable in any multiple of $100 at any interest paying date."

The answer denied the averments of the petition and alleged, among other things, that the plaintiff company, through its president and general manager, F. W. Casner, proposed to give the defendant an option on the real estate described; that Casner prepared the instrument sued on, which he represented was merely an option; and that relying on such representation, the defendant signed it.  It was further alleged that on May 19, 1910, the defendant wrote Casner a letter in order to give him notice that he intended to pay $330 "in full satisfaction of the terms of said option," setting out a copy; that hearing nothing in reply, the defendant, on or about June 11, 1910, forwarded to the plaintiff a check for $330, "in payment of the amount due according to the terms of said option," which Casner refused.

On the trial it was admitted that the plaintiff and defendant executed the contract; that the defendant went into possession of the property and collected the rents; and that on

June 7, 1910, plaintiff tendered the instruments and transfers referred to in the abstract, and still tendered them.

The court found as facts that the contract was prepared in duplicate by Casner after a conference with Oswald, and one or both copies were immediately delivered to Oswald, who delivered them to his attorney in this action for examination, correction and approval; that the attorney made several changes by interlineation, and returned the contract to the defendant; that Casner and Oswald met at an office where the duplicate copies were talked over, and they discussed the interlineation, and by mutual agreement made certain changes, after which the contracts were completed as they now stand and were signed in duplicate; "(Sixth.) That F. W. Casner did not misrepresent the contents of said contract to defendant or mislead him in any way;" that the defendant, after the plaintiff had made tender under the contract and had made demand for the purchase price, sent F. W. Casner a check on June 11, 1910, for $330, which check was returned to the defendant; and "(Thirteenth.) That defendant is a successful business man of Hutchinson, Kansas, fifty years old, with a good education, good eyesight and is not laboring under any physical or mental disability and is possessed of all his faculties, and was at all times named in this suit." It was further found that the letter of May 19 was not personally received by Casner, and that the company had no place of business in Kansas, and that its business was transacted by Casner, whose post-office address was Kansas City, Mo.; that the letter was "duly addressed to F. W. Casner, Kansas City, Missouri," with proper postage and return card, and was never returned to the sender.

The court concluded as matters of law that the contract was one of sale, and also an option contract—an option to resell and not to purchase; that the letter of May 19 was a sufficient demand and notice that the defendant "intended to insist on his rights under the option to resell to the plaintiff"; and that on making his tender of $330 good the defendant should have judgment for costs.

It is clear that the defendant is bound by the terms of the contract, which he deliberately entered into with full knowledge or means of knowledge as to its contents and meaning,

and that no representation or previous conversation can affect the situation.

But two questions arise—the meaning of the contract, and the effect of the defendant's letter and remittance. The instrument recites that the company has sold and Oswald has purchased the described lots for $11,000, to be paid on or before June 3 ,1910; that the property sold included the buildings thereon; that the title to the premises should be delivered to Oswald within ten days after payment and written demand. This meant the title papers, for the next clause recited that "said title" should consist of full warranty deed and abstract of title.

The clause after the signature provided for payment of $4,000 cash and a mortgage for the remaining $7,000.

All these things taken together foreclose any question as to the instrument's being a contract for the purchase of the lots by Oswald. It was a contract of sale by plaintiff company, and the trial court was right in its conclusion.

The provision that upon written demand at any. time prior to June 3, 1910, and the payment of $330 the company agreed to repurchase the property at the same price, $330, providing it be tendered back in its present condition, natural order, and free from loss by fire, and kept insured for $1,000, is what the trial court rightly termed it, an option to resell, and the final clause in the body of the contract was significant:

"Time being the essence of this contract and if purchase is made under the terms hereof that this contract shall be cancelled; otherwise to remain in full force and effect."

So under this plain agreement Oswald could require the company to take the property back only on condition that he make written demand before June 3, 1910, and pay $330. What he did was to write a letter on May 19, in which he spoke of his efforts to sell the property and the price placed on it, which he deemed too high, repeatedly referring to the deal as an option matter, and said—

"Now I think the only thing for me to do is to pay you the $330 interest and make a new option along the lines I suggested when we made this deal last September. . . . If you will telephone me the next time you are in the city I will meet you at the hotel or at the theatre, or any place that suits you so we can talk the matter over without being disturbed. If we can not make a satisfactory deal I will be willing to give

you a check for the interest and close the deal. I thought I had better write in time so you could see me and if could not make a deal some kind we could close this one to our satisfaction."

All this letter amounts to is a suggestion that the parties get together and make a new contract, and that in case they should be unable to do so, the defendant would want to take advantage of the option in the present one. It is not an assertion of any present right to demand that his option to sell be met. It is not a demand in writing; the letter does not tender or even suggest a tender of the required amount of money, but suggests the future payment thereof in case the parties do not at some subsequent time come together upon a new contract. There is nothing in this letter which amounts to any sort of compliance with the contract by way of demanding the repurchase of the lots by the plaintiff company within the specified time. It appears that the parties did not get together and did not meet until about the 7th day of June, four days after the expiration of the essential time fixed by the contract, at which time Casner tendered a delivery of the deed and abstracts. Instead of accepting these instruments, the defendant, four days still later, mailed a check to Casner for $330, which was returned. True, at the meeting on the 7th of June Oswald advised Casner of the letter he had written on the 19th of May, and of his refusal to carry out the contract, and his desire to pay the $330 and surrender possession at once. This was not acceptable to Casner, neither was it in accordance with the terms of the contract.

The conclusion that the letter of May 19 was a sufficient demand or notice on the contract is not justified by the facts and findings or the terms of the agreement entered into by the parties.

For this error the judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff.